**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**TWTB, INC.,** *et al.*                                         **CIVIL ACTION**

**VERSUS**                                                          **NO. 15-3399**

**BRUCE J. RAMPICK**                                       **SECTION: "G"(2)**

## ORDER

In this litigation, Plaintiffs TWTB, Inc. ("TWTB") and Frank Eugene Raper ("Raper") (collectively "Plaintiffs") allege that Defendant Bruce Rampick ("Rampick") violated his fiduciary duties as a director, officer, and shareholder of TWTB.[1] LRSBR, LLC ("LRSBR"), which was formed by Rampick, has filed a third party complaint against TWTB for trademark infringement.[2] TWTB has filed a cross-claim against LRSBR alleging that LRSBR breached its trademark License Agreement.[3] Pending before the Court is LRSBR's "Motion for Preliminary Injunction,"[4] in which LRSBR requests that the Court enjoin TWTB from using its registered and unregistered trademarks and seeks attorneys' fees. Having reviewed the motion, the memoranda in support, the memorandum in opposition, the evidence, and the applicable law, the Court will grant the motion in part and deny it in part.

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 10.

[3] Rec. Doc. 18.

[4] Rec. Doc. 17.

# I. Background

## A.    *Factual Background*

In their complaint, Plaintiffs allege that TWTB was lawfully created on or about September 17, 1992.[5] TWTB is 50.5% owned by Rampick, 24.75% owned by Raper, and 24.75% owned by the Joseph E. and Janice V. Anthony Trust ("Anthony)."[6] The primary business purpose of the creation of TWTB was to create an ongoing restaurant and bar establishment known as "Lucy's Retired Surfer's Bar & Restaurant," located at 701 Tchoupitoulas Street in New Orleans, Louisiana.[7] In or about June 2012, TWTB adopted its current by-laws and the Shareholders' Agreement.[8] At that time, Rampick was the president of TWTB, as well as a director and shareholder.[9] TWTB also entered into a trademark License Agreement in June 2012 with LRSBR, pursuant to which LRSBR licensed TWTB to use trademarks owned by LRSBR, including "the federally registered trademarks 'Retired Surfers Bar and Restaurant' and 'Salt Water Wash Only' and all other tradenames, trademarks, service marks, marks or terms . . . owned by Licensor its successors and assigns."[10]

Plaintiffs allege that Raper was notified in or about October or November 2014 of alleged violations of Rampick's fiduciary duties to TWTB and that an investigation was undertaken.[11] Plaintiffs allege that on January 11, 2015, based upon the findings of the investigation, it was

---

[5]  Rec. Doc. 1 at p. 2.

[6]  Rec. Doc. 10 at p. 11; LRSBR Ex. 14.

[7]  Rec. Doc. 1 at p. 3.

[8]  *Id.* at p. 2.

[9]  *Id.*

[10]  Rec. Doc. 10 at p. 7.

[11]  Rec. Doc. 1 at pp. 3–4.

determined by the Board of Directors that Rampick had violated his fiduciary duties to TWTB and that those determinations gave rise to "Just Cause," as defined in the by-laws, to remove Rampick from his office as President and remove him from the Board of Directors.[12]

On May 26, 2015, LRSBR allegedly notified TWTB, by letter, of at least four material breaches of the License Agreement, pursuant to which TWTB had 30 days to cure the alleged breaches.[13] On June 11, 2015, counsel for TWTB replied to the letter.[14] LRSBR alleges that on August 24, 2015, LRSBR terminated the License Agreement "due to TWTB's failure to cure the material breaches of the Agreement identified in the May 26 letter."[15] LRSBR contends that despite the termination of the License Agreement, TWTB continues to use the trademarks owned by LRSBR.[16]

## B.      *Procedural Background*

On August 11, 2015, TWTB and Raper filed a complaint against Rampick, alleging, *inter alia*, that Rampick stole money and other assets from TWTB.[17] On September 25, 2015, LRSBR moved for leave to intervene, which was granted on October 2, 2015.[18] LRSBR filed its third party complaint alleging trademark infringement against TWTB on October 2, 2015.[19] On November 6,

---

[12] *Id.* at pp. 4–5.

[13] Rec. Doc. 10 at p. 7.

[14] *Id.*

[15] *Id.* at p. 8.

[16] *Id.* at p. 10.

[17] Rec. Doc. 1.

[18] Rec. Doc. 8; Rec. Doc. 9.

[19] Rec. Doc. 10.

2015, TWTB filed an answer and cross-claim against LRSBR for breach of contract, alleging that LRSBR had committed a breach of the trademark License Agreement.[20]

LRSBR filed the instant motion on October 16, 2015.[21] TWTB filed an opposition on November 17, 2015.[22] With leave of court, LRSBR filed a reply on November 23, 2015.[23] The Court held an evidentiary hearing on December 8, 2015.[24]

## II. Parties' Arguments

### A.   LRSBR's Arguments in Support of Preliminary Injunctive Relief and Attorneys' Fees

LRSBR moves for (1) a preliminary injunction enjoining TWTB "from further infringement of the Lucy's trademarks" and (2) reasonable attorneys' fees and costs incurred in the preparation and filing of their motion.[25] LRSBR contends that it meets all four elements required for a preliminary injunction.[26]

First, LRSBR contends that there is a substantial likelihood that it will succeed on its trademark infringement claims against TWTB concerning: (1) infringement of its registered trademarks; and (2) infringement of the unregistered "Lucy's" mark and TWTB's unregistered surfer bar trade dress.[27] LRSBR essentially argues that: (1) TWTB's use of the word "Lucy's" constitutes

---

[20] Rec. Doc. 18 at p. 34.

[21] Rec. Doc. 17.

[22] Rec. Doc. 22.

[23] Rec. Doc. 30.

[24] Rec. Doc. 27.

[25] Rec. Doc. 17.

[26] Rec. Doc. 17-2 at p. 6.

[27] *Id.* at p. 14.

trademark infringement of LRSBR's registered trademarks; (2) TWTB's use of the word "Lucy's" constitutes trademark infringement because LRSBR has a valid unregistered trademark in the word "Lucy's"; and (3) TWTB's use of the surfer bar trade dress constitutes trade dress infringement.

Second, LRSBR asserts that TWTB is causing injuries that cannot be fully redressed by money damages because TWTB is damaging the goodwill in the Lucy's marks and preventing LRSBR from making use of the marks.[28] Third, LRSBR contends that the balance of harms is overwhelmingly in its favor because "an injunction will only force TWTB to do what both trademark law and the License Agreement require."[29] Fourth, LRSBR avers that TWTB is confusing consumers and an injunction that stops such confusion is in the public interest.[30]

LRSBR also moves for attorneys' fees and costs, asserting that under the Federal Trademark Act, a court may award reasonable attorneys' fees in exceptional cases.[31] LRSBR contends that TWTB is willfully infringing the Lucy's marks and has effectively stolen the Lucy's brand, and therefore LRSBR is entitled to an award of attorney's fees and costs.[32]

**B.**    ***TWTB's Arguments in Opposition to Preliminary Injunctive Relief and Attorneys' Fees***

TWTB agrees that in order to succeed on its motion for a preliminary injunction, LRSBR must prove the four elements addressed by LRSBR.[33] Citing the Fifth Circuit in *Lake Charles*

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.* at p. 26.

[32] *Id.*

[33] Rec. Doc. 22 at p. 7 (citing *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006)).

5

*Diesel, Inc. v. General Motors Corp.*,[34] TWTB contends that a "preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements."[35]

First, TWTB contends that LRSBR cannot show that it has a substantial likelihood of success on the merits.[36] TWTB asserts that although LRSBR owns its registered trademarks, it does not own any trade dress, nor does it own the word "Lucy's."[37] Furthermore, TWTB asserts that LRSBR cannot show that there is a likelihood of confusion between LRSBR's marks and the phrases and images utilized by TWTB, in part, because "[t]here is no evidence that LRSBR and TWTB are actually in competition."[38]

Second, in opposition to LRSBR's claim that there is a substantial threat of irreparable injury, TWTB asserts that "[a]n injunction is a harsh, dramatic, and extraordinary remedy, and should only issue where the party seeking it is threatened with irreparable lo[s]s of injury without adequate remedy at law."[39] TWTB contends that LRSBR has offered no evidence to support its sweeping statements that LRSBR is damaging the goodwill associated with LRSBR's trademarks.[40]

---

[34]  328 F.3d 192, 195–96 (5th Cir. 2003).

[35]  Rec. Doc. 22 at p. 7.

[36]  *Id.*

[37]  *Id.* at p. 8.

[38]  *Id.* at pp. 16–20.

[39]  *Id.* at p. 21 (quoting *New Orleans City v. BellSouth Telecomms., Inc.*, 728 F. Supp. 2d 834, 838 (E.D. La. July 26, 2010) (Fallon, J.)).

[40]  *Id.*

Third, turning to the weighing of the harms, TWTB asserts that the damage that it would suffer if the Court were to grant LRSBR's request would be "truly catastrophic."[41] TWTB avers that its lease requires it to operate a restaurant and bar using the name "Lucy's" and if it could no longer use that name, the landlord could allege that it is in default of its obligations under the lease.[42] Fourth, TWTB asserts that an injunction will disserve the public interest as it will "restrict free trade in Louisiana and will essentially eliminate TWTB's ability to do business, despite the fact that TWTB has undertaken in good faith a tremendous effort and cost to ensure that it in no way violates any of LRSBR's trademarks."[43]

TWTB also contends that in the event that the Court finds that LRSBR is entitled to injunctive relief, LRSBR's motion for attorneys' fees and costs should be denied because the evidence shows that TWTB has made "every effort *not* to infringe on LRSBR's trademarks" and therefore the case cannot be said to be exceptional.[44]

## C.   *Evidentiary Hearing Testimony*

In support of its motion for a preliminary injunction, LRSBR called as witnesses: (1) Gary Wollerman ("Wollerman"), an individual with over 40 years of experience in the New Orleans restaurant business; (2) Defendant Bruce Rampick; (3) Sarah Campbell ("Campbell"), former events manager and general manager of the Lucy's Retired Surfer's Bar & Restaurant in New Orleans; (4) Dave Dillen ("Dillen"), another former general manager of the Lucy's Retired Surfer's Bar &

---

[41]  *Id.*

[42]  *Id.* at pp. 22–23.

[43]  *Id.* at pp. 23–24.

[44]  *Id.* at p. 24.

Restaurant in New Orleans; and (5) Virginia Saussy ("Saussy"), a marketing consultant who was previously retained by Rampick to work with the Lucy's Retired Surfer's Bar & Restaurant business.[45]

In opposition, TWTB called as witnesses: (1) Plaintiff Frank Eugene Raper; and (2) Deborah Schumacher ("Schumacher"), the general manager at Lucy's who was responsible for removing any LRSBR-owned federally registered trademarks from the business.[46]

### III. Preliminary Injunction

**A.   *Standard for Preliminary Injunction***

A preliminary injunction is an "extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion'" on all required elements.[47] Four elements must be proven before a court will issue a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the nonmovant; and (4) granting the injunction will not disserve the public interest.[48] If the movant fails to meet its burden regarding any one of the necessary elements, a court need not address the other elements necessary for granting a preliminary injunction.[49] At all times, the burden of persuasion remains on the movant

---

[45] Tr. at p. 2.

[46] *Id.*

[47] *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)); *see also Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999).

[48] *Lake Charles Diesel*, 328 F.3d at 195–96 (citing *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).

[49] *See Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir. 1990) (declining to address the remaining elements necessary to obtain a preliminary injunction after finding that plaintiff failed to show a substantial likelihood of success on the merits); *see also Barton v. Huerta*, 613 F. App'x 426, 427 (5th Cir. 2015) ("[F]ailure to succeed one any on of

as to each of these four elements.[50] Whether to grant or to deny a preliminary injunction is within the discretion of the trial court,[51] but "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule."[52]

## B.   Objections to Testimony

As an initial matter, the Court notes that during the evidentiary hearing, TWTB moved to strike the testimony of Gary Wollerman and objected to the testimony of Virginia Saussy, on the grounds that LRSBR had not complied with the requirements of Federal Rule of Civil Procedure 26 and therefore neither of the witnesses could be offered as experts.[53] In opposition, LRSBR asserted that TWTB had notice that Wollerman and Saussy would be offered as experts because both witnesses were referred to as experts in LRSBR's briefs.[54]

### 1.   Applicable Law

Federal Rule of Civil Procedure 26 requires parties to disclose the identity of any witness that it may use at trial to present expert opinion evidence under Federal Rule of Evidence 702, 703, or 705. Rule 26 requires that "[u]nless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report–prepared and signed by the witness–if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the

---

the elements results in a denial of injunctive relief.").

[50] *Callaway*, 489 F.2d at 573 (vacating an injunction where the district court improperly placed the burden of persuasion on the defendants to prove the injunction should not be granted, rather than requiring plaintiffs to carry their burden).

[51] *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984).

[52] *Miss. Power & Light*, 760 F.2d at 621.

[53] Tr. at pp. 28, 38, 140–41.

[54] *Id.* at pp. 30–31.

party's employee regularly involve giving expert testimony."[55] If the witness is not required to provide a written report, the disclosure must state the subject matter on which the witness is expected to present evidence as well as provide a summary of the facts and opinions to which the witness is expected to testify.[56] Rule 26 states that "[a]bsent a stipulation or a court order," expert testimony disclosures must be made "at least 90 days before the date set for trial or for the case to be ready for trial."[57]

### 2.    Analysis

During the evidentiary hearing, the Court limited Wollerman's testimony to his own personal views and experience because LRSBR had not made any expert disclosures.[58] The extent of Wollerman's testimony was that extensive work and effort went into the creation of the brand for Wollerman's own restaurant, and that Wollerman had visited "Lucy's" in the past week and it looked exactly the same as he had remembered it from previous visits.[59] Wollerman was not permitted to testify as an expert and offered no expert opinion testimony. Accordingly, because TWTB sought to exclude expert testimony and no such testimony was proffered, the Court denies TWTB's motion to strike Wollerman's testimony. TWTB also objected to Wollerman's testimony regarding his own restaurant's brand development as irrelevant.[60] The Court allowed Wollerman to

---

[55] Fed. R. Civ. P. 26(2)(B).

[56] Fed. R. Civ. P. 26(2)(C).

[57] Fed. R. Civ. P. 26(2)(D).

[58] Tr. at p. 33.

[59] *Id.* at pp. 37–38.

[60] *Id.* at pp. 36–37.

testify on the subject and asserted that it would assess the relevance at the conclusion.[61] Having considered the testimony, the Court finds that it need not rule on this matter as the Court does not rely upon this testimony in ruling on the instant motion.

TWTB also objected to Virginia Saussy testifying as an expert witness on the grounds that LRSBR had not complied with the requirements of Federal Rule of Civil Procedure 26.[62] The Court ruled during the evidentiary hearing that Saussy would not be permitted to testify as an expert, but stated that the Court would allow Saussy to testify as a lay witness and would decide later how much of her testimony to admit.[63] Upon reviewing the testimony of Virginia Saussy, the Court finds that the vast majority of her testimony was based upon her personal knowledge and experience working with the Lucy's Retired Surfer's Bar & Restaurant brand. The Court sustained an objection to a question regarding what a customer would think looking at a review on Yelp.[64] Although Saussy testified at one point that a Facebook user was confused about whether "Lucy's" is the same restaurant as "Lucy's Retired Surfer's Bar & Restaurant," the Court gives this testimony no weight. Therefore, with the exception of Saussy's answer to the question about the Facebook user, the Court will consider Saussy's testimony. The Court now turns to whether LRSBR has demonstrated a substantial likelihood of success on the merits of its trademark infringement claims.

---

[61] *Id.* at p. 37.

[62] *Id.* at p. 140–41.

[63] *Id.*

[64] *Id.* at pp. 156–57.

## C.     *Substantial Likelihood of Success on the Merits*

LRSBR essentially argues that: (1) TWTB's use of the word "Lucy's" constitutes trademark infringement of LRSBR's registered trademarks; (2) TWTB's use of the word "Lucy's" constitutes trademark infringement because LRSBR has a valid unregistered trademark in the word "Lucy's"; and (3) TWTB's use of the surfer bar trade dress constitutes trade dress infringement. The Court will address each of these arguments in turn.

### 1.     **Trademark Infringement Claim Regarding the Registered Trademarks**

Trademark infringement claims are governed by the Lanham Act, 15 U.S.C. § 1501 *et seq.* The Lanham Act defines "trademark," in relevant part, as:

> any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.[65]

In order to succeed on a trademark infringement claim, a plaintiff must show: (1) that it possesses valid trademarks; and (2) that another party's use of the marks "creates a likelihood of confusion as to [the] source, affiliation, or sponsorship."[66]

Registration of a trademark with the United States Patent and Trademark Office constitutes "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate . . . ."[67] TWTB

---

[65]   15 U.S.C. § 1127.

[66]   *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).

[67]   15 U.S.C. § 1057.

does not dispute the validity of LRSBR's registered trademarks.[68] These federally registered trademarks are: "LUCY'S RETIRED SURFER'S BAR & RESTAURANT," "SALT WATER WASH ONLY," "RETIRED SURFERS BAR & RESTAURANT," a design consisting of the word "Lucy's" in script above a silhouette of a surfboard and the words "RETIRED SURFERS BAR & RESTAURANT," as well as a "sailfish" logo.[69] Therefore, in order for LRSBR to succeed on its trademark infringement claim regarding its registered trademarks, it need only prove the second prong, that TWTB's use of the marks "creates a likelihood of confusion as to [the] source, affiliation, or sponsorship" of the restaurant's goods or services.[70] "A former licensee cannot mislead the public into believing that its affiliation continues once the licensing arrangement has ceased."[71]

The Fifth Circuit has enumerated eight "digits of confusion" to be considered in determining whether the use of a mark creates a likelihood of confusion: "(1) the type of trademark allegedly infringed[;] (2) the similarity between the two marks[;] (3) the similarity of the products or services[;] (4) the identity of the retail outlets and purchasers [;] (5) the identity of the advertising media utilized[;] (6) the defendant's intent[;] [] (7) any evidence of actual confusion[;] . . . [and] (8) the degree of care exercised by potential purchasers."[72] No single factor is dispositive and proof of

---

[68] Rec. Doc. 22 at p. 9.

[69] LRSBR Exs. 9–13.

[70] *Nola Spice Designs, L.L.C.*, 783 F.3d at 536.

[71] *Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975).

[72] *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012) (citations omitted). TWTB's reliance upon the Eastern District of Louisiana case from 1996, *Acme Refrigeration Supplies, Inc. v. Acme Refrigeration of Baton Rouge*, is misplaced. 961 F. Supp. 936, 938 (E.D. La. 1996) (Fallon, J.)). More recent case law from the Fifth Circuit instructs that there are more than four factors to be considered and not all four factors are necessary in order to find a likelihood of confusion. *Nat'l Bus. Forms & Printing, Inc.*, 671 F.3d at 532.

actual confusion is not necessary.[73] A court need not even find that a majority of the factors are met in order to find that there is a likelihood of confusion.[74]

LRSBR does not specifically argue how these factors support its trademark infringement claim regarding its federally registered trademarks. Instead, LRSBR performs a general analysis of these factors, arguing that all of TWTB's uses of LRSBR's marks, both registered and unregistered, create a likelihood of confusion.[75] In support of its argument that there is a likelihood of confusion with LRSBR's registered trademarks, LRSBR also analogizes to cases from other circuits where courts found a likelihood of confusion following the termination of franchise agreements.[76] LRSBR asserts that in those cases, the fact that the parties were former licensees made confusion more likely.[77] LRSBR also contends that the fact that TWTB is trying to trade on the goodwill of the Lucy's mark, alone, is enough to make confusion likely.[78] Upon reviewing the evidence presented during the hearing and the arguments put forth in the briefs, the Court is able to discern whether evidence has been presented to support these factors for LRSBR's trademark infringement claim regarding its registered trademarks. As LRSBR does not make any argument that there is a likelihood of confusion between TWTB's surfer bar trade dress and its federally registered trademarks, the Court focuses on TWTB's use of the word "Lucy's" as the potential trademark

---

[73] *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1122 n.9 (5th Cir. 1991).

[74] *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1159 (5th Cir. 1982).

[75] Rec. Doc. 17-2 at pp. 17–20.

[76] Rec. Doc. 33 at pp. 3–4

[77] *Id.* (citing *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1517 (11th Cir. 1990); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988)).

[78] *Id.* at p. 5 (citing *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 481 (5th Cir. 2008)).

infringement of LRSBR's registered trademarks. The Court now turns to the evidence presented at the evidentiary hearing regarding the factors of confusion.

### a.    Type of Trademark

The first factor, the type of mark, "refers to the strength of the mark."[79] In evaluating this factor, courts look to the distinctiveness of a mark and third-party use of that mark.[80] In order to assess the distinctiveness of a word mark, the Fifth Circuit looks to whether the mark is: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful.[81] In evaluating third-party use, "the trier of fact looks at *all* third party use, not just use in the same industry, to determine whether a mark is a 'weak' or a 'strong' mark."[82]

LRSBR simply asserts that "[t]he Lucy's marks are inherently distinctive and well-known in the New Orleans market."[83] LRSBR does not attempt to categorize any of its federally registered trademarks in terms of their distinctiveness. Here, the mark that is most similar to TWTB's use of the word "Lucy's" is LRSBR's federally registered trademark "Lucy's Retired Surfer's Bar & Restaurant."[84] The Fifth Circuit has explained that a suggestive mark is one that "subtly connotes something about the service or product."[85] In *Soweco, Inc. v. Shell Oil Co.*, the Fifth Circuit gave

---

[79] *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998).

[80] *Sun Banks of Fla., Inc. v . Sun Fed. Sav. and Loan Ass'n*, 651 F.2d 311, 315–16 (5th Cir. 1981).

[81] *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 537 (5th Cir. 2015).

[82] *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 848 n.24 (5th Cir. 1990).

[83] Rec. Doc. 17-2 at pp. 18–19 (citing *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir. 1983); *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs. L.L.C.*, 83 F. Supp. 2d 810, 818 (S.D. Tex. 1999)).

[84] LRSBR Ex. 11.

[85] *Sun Banks of Fla., Inc.*, 651 F.2d at 315.

the example that the term "Penguin" would be suggestive if used as a trademark for refrigerators.[86] The Court finds that this mark, "Lucy's Retired Surfer's Bar & Restaurant" relays information to the consumer both that it is a bar and restaurant and that the consumer might expect a "laid-back easy-going surf bar by the decor[] [and] by the attitude."[87] Accordingly, the Court finds that LRSBR's federally registered trademark "Lucy's Retired Surfer's Bar & Restaurant" is a suggestive mark which places it in the middle of the spectrum of distinctiveness.[88]

In evaluating the strength of a mark, however, courts also evaluate third-party use of the mark.[89] Neither party presented any evidence of any third-party use of any of LRSBR's registered trademarks aside from the alleged uses by TWTB. Furthermore, at the evidentiary hearing, Rampick testified that he had founded Lucy's Retired Surfer's Bar & Restaurant in New York City in 1984 and the name "Lucy's Retired Surfer's Bar & Restaurant" had been in use ever since.[90] Rampick further testified that the name had been used at the business' New York City locations, New Orleans locations, Austin, Texas location, Costa Rica location, as well as at other locations throughout Louisiana over the years.[91] Therefore, the Court finds that "Lucy's Retired Surfer's Bar & Restaurant" is a moderately strong mark.

---

[86] 617 F.2d 1178, 1184 (5th Cir. 1980).

[87] Tr. at p. 133.

[88] *See Sun Banks of Fla., Inc.*, 651 F.2d at 315 ("A strong mark is usually fictitious, arbitrary or fanciful and is generally inherently distinctive.").

[89] *Id.* at 315–16.

[90] Tr. at p. 47.

[91] *Id.* at pp. 71–76.

  b.      **Similarity Between the Two Marks**

LRSBR's federally registered trademark "Lucy's Retired Surfer's Bar & Restaurant" contains "standard characters without claim to any particular font, style, size, or color."[92] Another federally registered trademark owned by LRSBR is an image of the word "'Lucy's' in script above a silhouette of a surfboard and the words 'Retired Surfers Bar & Restaurant' below the surfboard."[93] It is undisputed that TWTB is now using the word "Lucy's" alone as the name of its business.

Evidence was presented through numerous witnesses at the evidentiary hearing that the word "Lucy's" was the dominant term in the registered trademark and was commonly used by itself. Sarah Campbell, former events manager and former acting general manager of Lucy's Retired Surfer's Bar & Restaurant, testified that customers identified the restaurant as "Lucy's" or "that surfer bar over on Tchoupitoulas."[94] David Dillen, who has been involved in the business' New Orleans, Austin, Texas, Costa Rica, and Mandeville, Louisiana locations, testified that the customers called the business "Lucy's."[95] Rampick testified that customers at all of the businesses he had opened with the name "Lucy's Retired Surfer's Bar & Restaurant" had called the business "Lucy's."[96] Saussy testified that in March 2014, Lucy's Retired Surfer's Bar & Restaurant started using the hashtag "lucysnola" in its posts on social media, but that customers had been using this hashtag on their own

---

[92] LRSBR Ex. 11.

[93] LRSBR Ex. 9.

[94] Tr. at p. 119.

[95] *Id.* at pp. 133–34.

[96] *Id.* at pp. 73–74.

before the restaurant made it an official promotion.[97] Even Raper testified that, when he became involved in the business in 1994 or 1995, the name of the business was "Lucy's."[98]

The fact that the name "Lucy's" was used on its own prior to the termination of the License Agreement is further evidenced by photographs of the building demonstrating that the word "Lucy's" alone is painted on two sides of the building in large, red block letters.[99] Saussy testified that the building has had the word "Lucy's" painted on the outside of the building for "many years."[100] Evidence was also presented that inside the restaurant, the word "Lucy's" alone appeared on chalkboards and on a mural in the courtyard of the restaurant that had been there for more than fifteen years.[101] Accordingly, considering the evidence before it, the Court finds that there is a strong similarity between TWTB's use of the word "Lucy's" and LRSBR's registered trademark, "Lucy's Retired Surfer's Bar & Restaurant," and therefore this factor weighs in favor of a finding that there is a likelihood of confusion.

### c.      Similarity of the Products or Services

TWTB argues that there can be no likelihood of confusion because LRSBR is a licensing company while TWTB runs a restaurant and therefore there is no evidence that TWTB and LRSBR are actually in competition.[102] The Court does not find this argument persuasive. In *Conan*

---

[97]  *Id.* at p. 166. A hashtag is "a word or phrase preceded by the symbol # that classifies or categorizes the accompanying text (such as a tweet)." Hashtag, *Merriam-Webster Dictionary*, http://www.merriam-webster.com/dictionary/hashtag.

[98]  *Id.* at p. 223.

[99]  LRSBR Ex. 29.

[100]  Tr. at p. 149.

[101]  *Id.* at pp. 57, 61.

[102]  Rec. Doc. 22 at p. 20.

*Properties, Inc. v. Conans Pizza, Inc.*, the Fifth Circuit addressed an argument by Conans Pizza that no reasonable person could have believed that its restaurants were related to Conan Properties, Inc.'s CONAN THE BARBARIAN since the products and services each provided were different.[103] The Fifth Circuit found that "[a]lthough CPI never licensed any entity to use its mark in connection with restaurant services, ordinary consumers may well believe that Conans was in fact licensed by CPI."[104] Therefore, the Court finds that the relevant analysis is not necessarily whether the products and services of the company that owns the mark and the company that uses the marks are the same, but whether ordinary consumers who patronize the restaurant are "likely to believe that the restaurant[] [is] in some way licensed by or affiliated with" LRSBR.[105] In this case, TWTB had a license to operate a restaurant and bar using LRSBR's trademarks; however, that license was terminated. Now, TWTB continues to operate a restaurant and bar with the name "Lucy's." Therefore, the relevant analysis is whether ordinary consumers believe that the restaurant and bar is still licensed by or affiliated with LRSBR.

During the duration of the License Agreement, the trademark "Lucy's Retired Surfer's Bar & Restaurant" was being used to advertise a restaurant and bar with a surfer theme. Now, TWTB is using the word "Lucy's" to advertise a restaurant and bar with a surfer theme. Accordingly, the Court finds that this factor weighs strongly in favor of a finding that there is a likelihood of confusion.

---

[103]  752 F.2d 145, 150 (5th Cir. 1985).

[104]  *Id.*

[105]  *Id.*

### d.      Identity of the Retail Outlets and Purchasers

It is undisputed that TWTB's business operates out of the same physical location as it did when it was licensed to use LRSBR's trademarks. Therefore, the Court finds that this factor also weighs strongly in favor of a finding that there is a likelihood of confusion.

### e.      Identity of Advertising Media Utilized

"The use of a mark in advertising is highly probative of whether the mark creates a likelihood of confusion in relation to another mark."[106] LRSBR presented evidence that TWTB continues to use the same social media accounts, including the same Facebook account, Instagram account, Yelp web page, and TripAdvisor web page as it did when it was licensed by LRSBR to use the trademarks.[107] Accordingly, the Court finds that this factor also weighs strongly in favor of a finding that there is a likelihood of confusion.

### f.      Defendant's Intent

LRSBR also presented evidence that TWTB is intending to trade on the goodwill of the "Lucy's" mark. Saussy testified regarding an Instagram post that was posted following the termination of the License Agreement.[108] The post shows the new logo used by TWTB, the word "Lucy's" in red block letters with a blue outline and a blue wave underneath the word. Underneath the photo are the words "Lucy's #neworleans has a new look . . . whatcha think? #lucysnola."[109] The Instagram post indicates that the business is simply striving for a "new look," not that it is no longer

---

[106] *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 197 (5th Cir. 1998).

[107] Tr. at pp. 149, 151, 158–59, 161.

[108] *Id.* at p. 149.

[109] LRSBR Ex. 60.

a licensed "Lucy's Retired Surfer's Bar & Restaurant." Saussy also testified that during the time that she was retained by Rampick, the business had begun using the hashtag "lucysnola," a practice that is clearly being continued by TWTB.[110] Saussy additionally testified that the social media accounts that she had managed for the business are the same accounts that are currently being used by TWTB and contain reviews from before the License Agreement was terminated, although the name being advertised is no longer "Lucy's Retired Surfer's Bar & Restaurant" but has been changed to "Lucy's."[111]

The Court therefore finds that TWTB does intend to trade on the goodwill of the marks in its use of the word "Lucy's." Although TWTB presented testimony of the efforts it has taken to design a new logo and replace objects which contained the LRSBR federally registered trademarks, the Court finds that, through its social media accounts, "Lucy's" is clearly holding itself out to be the same business as the licensed "Lucy's Retired Surfer's Bar & Restaurant." Therefore, the Court finds that this factor weighs in favor of a finding that there is a likelihood of confusion.

### g.    *Actual Confusion*

LRSBR also presented evidence of actual confusion. LRSBR submitted as evidence posts on social media sites where customers identified that they were at "Lucy's" and tagged the official fan page for "Lucy's Retired Surfer's Bar & Restaurant."[112] LRSBR also submitted as evidence an instance where the official fan page for Lucy's Retired Surfer's Bar & Restaurant was tagged in a post describing how the current "Lucy's" restaurant had provided food for an event but the post

---

[110]  Tr. at p. 163.

[111]  *Id.* at 149, 151, 158–59, 161–62.

[112]  *Id.* at p. 170; LRSBR Ex. 46.

thanked "Lucy's Retired Surfers Bar."[113] Accordingly, the Court finds that this factor weighs in favor of a finding that there is a likelihood of confusion.

### h.   *Degree of Care Exercised by Potential Purchasers*

Although there was evidence in the record that customers do use websites such as TripAdvisor and Yelp in deciding whether to patronize a particular restaurant, neither party briefed or made arguments during the evidentiary hearing regarding the degree of care exercised by potential customers in deciding whether to patronize the restaurant. Therefore, the Court finds that this factor is neutral.

### i.   *Conclusion*

Following the termination of the License Agreement, TWTB has changed the name of the business from "Lucy's Retired Surfer's Bar & Restaurant" to "Lucy's;" however, it is operating out of the same location and providing the same restaurant and bar services as it did prior to the termination of the License Agreement. The new restaurant advertises in the same places, through social media and print media, and there was evidence presented that the business operating as "Lucy's" uses the same social media accounts as it did when it was using the name "Lucy's Retired Surfer's Bar & Restaurant," having simply changed the name to "Lucy's." The Court finds that TWTB's use of the name "Lucy's" is highly likely to create confusion in the mind of the ordinary consumer as to the "source, affiliation, or sponsorship" of its products and services. Accordingly, the Court finds that LRSBR has clearly carried its burden of persuasion on its trademark infringement claim by demonstrating that TWTB's use of the word "Lucy's" creates a likelihood of confusion.

---

[113] Tr. at p. 170; LRSBR Ex. 45.

Although the majority of LRSBR's arguments regarding its trademark infringement claim for its registered trademarks were focused upon TWTB's use of the word "Lucy's," LRSBR also argued in its briefs that TWTB was continuing to use some registered trademarks of LRSBR.[114] LRSBR asserted that people trying to access the old, authorized "Lucy's Retired Surfer's Bar & Restaurant" website were being redirected to the new website for "Lucy's."[115] TWTB presented the testimony of Deborah Schumacher, the general manager of "Lucy's," who testified that the website "lucysretiredsurfers.com" was no longer in operation.[116] However, LRSBR presented evidence that up until the day prior to the hearing, the website "lucysnola.com" was directing users to "lucysretiredsurfers.com"[117]

Schumacher also testified that she was unaware of any instance in which the registered trademarks of LRSBR are currently displayed.[118] To the extent that any such instances of TWTB's use of LRSBR's registered trademarks remain, the Court finds that, for the same reasons discussed above, their use also creates a likelihood of confusion.

### 2.     Trademark Infringement Claims Regarding the Unregistered Marks

LRSBR's second argument is that it has a substantial likelihood of success on its trademark infringement claim regarding its unregistered trademarks.[119] As with LRSBR's trademark infringement claim for its registered trademarks, in order to succeed on its trademark infringement

---

[114] Rec. Doc. 33 at p. 8.

[115] *Id.*

[116] Tr. at p. 243.

[117] *Id.* at p. 192.

[118] *Id.* at p. 235.

[119] *Id.* at p. 8.

claim for its unregistered marks, LRSBR must show: (1) that it possesses valid trademarks; and (2) that another party's use of the marks "creates a likelihood of confusion as to [the] source, affiliation, or sponsorship."[120] LRSBR asserts two trademark infringement claims for its unregistered marks, one for the unregistered mark "Lucy's," and the second for its unregistered "surfer bar trade dress."[121]

The Supreme Court in *Two Pesos, Inc. v. Taco Cabana, Inc.*, observed that "the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)."[122] The Supreme Court found that to have a protectable property right under the Lanham Act, "a mark must be capable of distinguishing the applicant's goods from those of others."[123] In order to be legally protectable, a mark must be either inherently distinctive, where "its intrinsic nature serves to identify a particular source," or it must have developed a secondary meaning "which occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself."[124] The Fifth Circuit has found that trade dress, in particular, is protectable if it is inherently distinctive or has achieved secondary meaning in the public's mind, and is not functional.[125] If LRSBR can show that it has a protectable property right in its marks, in

---

[120] *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).

[121] Tr. at p. 8.

[122] 505 U.S. 763, 768 (1992).

[123] *Id.* at 768.

[124] *Nola Spice Designs, L.L.C.*, 783 F.3d at 537 (quoting *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210–11 (2000)).

[125] *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001).

order to succeed on its trademark infringement claim, it must then show that TWTB's use of the marks "creates a likelihood of confusion as to the source, affiliation, or sponsorship."[126]

First, LRSBR contends that TWTB is estopped from challenging LRSBR's ownership of the Lucy's marks because it is a former licensee of the Lucy's marks.[127] LRSBR asserts that the term "Lucy's Marks" was defined in the License Agreement to include the federally registered Lucy's trademarks "and all other tradenames, trademarks, service marks, marks or terms" owned by LRSBR.[128] Furthermore, it contends that the "Lucy's System," which LRSBR also granted TWTB the license to use in the License Agreement, was defined to include "a casual 'surfer bar' style restaurant and bar."[129] In support, LRSBR cites *Professional Golfers Association of America v. Bankers Life and Casualty Co*,[130] in which the Fifth Circuit found that a former licensee is estopped from challenging the licensor's ownership of trademarks during the course of the licensing agreement, but may challenge ownership based upon facts that arise after the contract has expired.[131] LRSBR submitted as evidence the License Agreement entered into by LRSBR and TWTB.[132]

A contract has the effect of law for the parties and the words of a contract must be given their generally prevailing meaning.[133] "When the words of a contract are clear and explicit and lead to no

---

[126] *Nola Spice Designs, L.L.C.*, 783 F.3d at 536.

[127] Rec. Doc. 17-2 at p. 16.

[128] *Id.*

[129] *Id.* at pp. 16–17.

[130] 514 F.2d 665 (5th Cir. 1975).

[131] *Id.* at 671.

[132] LRSBR Ex. 14.

[133] La. Civ. Code arts. 1983, 2047.

absurd consequences, no further interpretation may be made in search of the parties' intent."[134] Where a contract is unambiguous, the interpretation of the contract becomes a matter of law.[135] "A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed."[136] When a contract is ambiguous, parol or extrinsic evidence may be admissible to prove the intent of the parties.[137]

In the License Agreement, the word "Marks" is defined as:

the trade name "Lucy's Retired Surfer's Bar and Restaurant" including, without limitation, the federally registered trademarks "Retired Surfers Bar and Restaurant" and "Salt Water Wash Only" and all other tradenames, trademarks, service marks, marks or terms (whether, in the case of any ol [sic] said tradenames trademarks, service marks, or terms: a word, combination of words or parts of words, letter or combination of letters, acronym, phrase, slogan, jingle, sound, image, animation, video clip, color, color combination, trade dress whether product packaging, product configuration or otherwise), web address, symbol, logo, design or otherwise) owned by Licensor its successors and assigns.[138]

In the License Agreement, the term "Lucy's System" is defined as:

the system owned by Licensor . . . and used by Licensor . . . at any time . . . for: (a) developing, marketing, advertising and operating all or any part of a casual 'surfer bar' style restaurant and bar or other food outlet in association with the Marks; or (b) making, selling, promoting, delivering and distributing goods (including, without

---

[134] La. Civ. Code art. 2046.

[135] *Strachan Shipping Co. v. Dresser Indus., Inc.*, 701 F.2d 483, 486 (5th Cir.1983).

[136] *Campbell v. Melton*, No. 2001-2578 (La. 5/14/02); 817 So. 2d 69, 75.

[137] *Id.*

[138] LRSBR Ex. 14 at p. 2.

limitation, prepackaged food items) and merchandise in association with the Marks.[139]

The contract does not address whether the parties intended for the word "Lucy's" or the surfer bar trade dress to be included within these definitions. The Court therefore finds that the provision regarding what marks were covered under the License Agreement is ambiguous. Accordingly, the Court will look to extrinsic evidence to determine the intent of the parties regarding the scope of this provision.

### a.   The Word "Lucy's"

In the Shareholders' Agreement, which was executed concurrently with the License Agreement, "Lucy's Trademarks" are defined to include four federally registered trademarks, as well as "the mark LUCY'S, LUCY'S RETIRED SURFERS BAR AND RESTAURANT, and other variations on these marks as used in connection with bar and restaurant services and related goods and services."[140] The Shareholders' Agreement also specifically states that "[t]he Shareholders agree and acknowledge that TWTB, Inc. does not own the Lucy's Trademarks. The Shareholders further agree not to challenge or contest the ownership of the Lucy's Trademarks by Rampick or LRSBR, LLC."[141] This is strong evidence that the word "Lucy's" falls within the catch-all category in the License Agreement of "all other tradenames, trademarks, service marks, marks or terms . . . owned by Licensor its successors and assigns."

---

[139] *Id.* at p. 3.

[140] LRSBR Ex. 15 at p. 2.

[141] *Id.* at p. 3.

In addition, during the evidentiary hearing, Rampick testified that, at the time, he understood the License Agreement to include the word "Lucy's."[142] Furthermore, when Raper was asked about his interpretation of the Shareholders' Agreement, his response was the "Lucy's Trademarks" section of the Shareholders' Agreement listed "the mark LUCY'S, LUCY'S RETIRED SURFERS BAR AND RESTAURANT," which he may have interpreted as being one mark, rather than two marks.[143] However, when Raper was asked, "In all the time you've worked at the business, have you ever seen the business use the trademark 'Lucy's, Lucy's Retired Surfers Bar & Restaurant?'" he responded "No, I have not."[144] This is further evidence that when the parties signed the Shareholders' Agreement, they intended "Lucy's Trademarks" to include both the word "Lucy's" alone, as well as the full name "Lucy's Retired Surfers Bar and Restaurant." The Court finds that there is substantial evidence in the record to demonstrate that the parties intended the License Agreement to include the word "Lucy's."

The Fifth Circuit has found that a licensee, by virtue of the agreement, has recognized the holder's ownership and is therefore estopped from contesting the validity of the licensor's title during the course of the licensing arrangement.[145] The Fifth Circuit has also held that "after expiration of the license, a former trademark licensee may challenge the licensor's title on facts which arose after the contract has expired."[146] TWTB's argument regarding LRSBR's ownership of the word "Lucy's," however, is that the word "Lucy's" is not inherently distinctive, not that

---

[142] Tr. at p. 77.

[143] *Id.* at p. 212.

[144] *Id.*

[145] *Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 671 (5th Cir. 1975).

[146] *Id.*

circumstances have changed since the termination of the License Agreement that undermine the validity of the mark.[147] Because this argument is not based on facts that arose after the License Agreement was terminated, it does not fall within the exception to estoppel by a former licensee. Accordingly, the Court finds that LRSBR has presented substantial evidence that TWTB is estopped from contesting LRSBR's ownership of the word "Lucy's," and therefore has demonstrated that it possesses a valid trademark in the name "Lucy's," meeting the first prong of its trademark infringement claim.

The Court now turns to the second prong of a trademark infringement claim: whether there is a likelihood of confusion.[148] As discussed above, the Fifth Circuit has enumerated eight "digits of confusion" to be considered in determining the likelihood of confusion.[149] Although LRSBR does not specifically argue how these factors support its trademark infringement claim regarding its unregistered trademarks, LRSBR performs a general analysis of these factors.[150] Upon reviewing the evidence presented during the hearing and the arguments put forth in the briefs, the Court is able to discern whether evidence has been presented to support these factors for LRSBR's trademark infringement claim for its unregistered "Lucy's" mark.

---

[147] Rec. Doc. 22 at pp. 14–16.

[148] *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc*., 783 F.3d 527, 536 (5th Cir. 2015).

[149] *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012) (citations omitted).

[150] Rec. Doc. 17-2 at pp. 17–20.

i.      Type of Mark

The first factor, the type of mark, "refers to the strength of the mark."[151] In evaluating this factor, courts look to the distinctiveness of a mark and third-party use of that mark.[152] In order to assess the distinctiveness of a word mark, the Fifth Circuit looks to whether the mark is: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful.[153] In evaluating third-party use, "the trier of fact looks at *all* third party use, not just use in the same industry, to determine whether a mark is a 'weak' or a 'strong' mark."[154]

The Fifth Circuit in *Amazing Spaces, Inc. v. Metro Mini Storage* found that a word is arbitrary if it "bears no relationship to the products or services to which [it is] applied."[155] LRSBR asserts that the "Lucy's" mark is inherently distinctive because the word has no descriptive or generic meaning in connection with restaurant and bar services.[156] However, "Lucy's" is a personal name. Personal names are generally regarded as descriptive terms that require proof of secondary meaning.[157]

---

[151]  *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998).

[152]  *Sun Banks of Fla., Inc. v . Sun Fed. Sav. and Loan Ass'n*, 651 F.2d 311, 315–16 (5th Cir. 1981).

[153]  *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527 (5th Cir. 2015).

[154]  *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 848 n.24 (5th Cir. 1990).

[155]  608 F.3d 225, 241 (quoting *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790–91 (5th Cir. 1983)).

[156]  Rec. Doc. 17-2 at p. 15.

[157]  2 *McCarthy on Trademarks & Unfair Competition* § 13.2 (4th ed.) ("Personal names are placed by the common law into that category of noninherently distinctive terms which require proof of secondary meaning for protection."). *See also Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 155 (5th Cir. 1985) ("'Conan' is a surname and can be regarded as a descriptive term rather than an inherently distinctive mark.").

The Fifth Circuit uses a seven-factor test to determine whether a mark has acquired secondary meaning in the minds of ordinary consumers.[158] The Fifth Circuit in *Conan Properties, Inc. v. Conans Pizza, Inc.* noted that one commentator has stated that this test requires a plaintiff to demonstrate that "the public has come to recognize the personal name as a symbol which identifies and distinguishes the goods or services of only one seller."[159] LRSBR never explicitly argues that the word "Lucy's" has acquired a secondary meaning in the minds of ordinary consumers. LRSBR only argues that the word "Lucy's" was inherently distinctive.[160]

In addition to evaluating the distinctiveness of the mark, courts also look to third-party use of that mark.[161] During the evidentiary hearing, TWTB presented documents from the United States Patent and Trademark Office and Louisiana Secretary of State's business filings to show that numerous other businesses in Louisiana and the United States use the word "Lucy's" in connection with their businesses. Accordingly, based upon the evidence presented, the Court finds that the word "Lucy's" is a weak mark.

### ii. Similarity Between the Two Marks

LRSBR presented evidence that the name "Lucy's" had been used in lieu of the longer formal name of the business, "Lucy's Retired Surfer's Bar & Restaurant," for decades. Dave Dillen, who has held numerous positions at several Lucy's Retired Surfer's Bar & Restaurant locations,

---

[158] *Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs. Inc.*, 799 F.3d 437, 445 (5th Cir. 2015). These factors are: (1) length and manner of use of the mark or trade dress; (2) volume of sales; (3) amount and manner of advertising; (4) nature of use of the mark or trade dress in newspapers and magazines; (5) consumer-survey evidence; (6) direct consumer testimony; and (7) the defendant's intent in copying the mark. *Id.*

[159] *Conan Props., Inc.*, 752 F.2d at 155 (quoting 2 *McCarthy on Trademarks & Unfair Competition* § 13.2 (4th ed.)).

[160] Rec. Doc. 17-2 at p. 15.

[161] *Sun Banks of Fla., Inc. v . Sun Fed. Sav. and Loan Ass'n*, 651 F.2d 311, 315–16 (5th Cir. 1981).

including in New Orleans, Austin, Texas, Costa Rica, and Mandeville, Louisiana, testified that the customers referred to the business as "Lucy's."[162] Rampick also testified that the businesses he formed in New York City, Louisiana, Costa Rica, and Austin, Texas, were all identified by customers as "Lucy's."[163]

It is undisputed that TWTB is now using the word "Lucy's" as the name of its business. Although there has been some change in the design, with TWTB using the word "Lucy's" in red block letters with a blue border rather than the previous red script, the name "Lucy's" and the red color are the same. Furthermore, LRSBR presented evidence that the word "Lucy's" has been in place on the two faces of the building in large, red block letters for many years.[164] LRSBR also presented evidence that some use of the previous design, with the word "Lucy's" in red script, remains in the restaurant, including on a mural in the courtyard of the restaurant.[165] Therefore, the Court finds that this factor weighs strongly in favor of a finding that there is a likelihood of confusion.

### iii.      Similarity of the Products or Services

The word "Lucy's" was being used to advertise a surf-theme restaurant and bar during the time the License Agreement was in effect. Now, after the termination of the License Agreement, TWTB continues to operate a surf-theme restaurant and bar called "Lucy's." Therefore, the Court finds that this factor weighs strongly in favor of a finding that there is a likelihood of confusion.

---

[162] Tr. at pp. 133–34.

[163] *Id.* at pp. 71–75.

[164] *Id.* at p. 149.

[165] *Id.* at pp. 57, 61.

### iv.      Identity of the Retail Outlets and Purchasers

It is undisputed that TWTB's business operates out of the same physical location as it did when it was licensed to use LRSBR's trademarks. Therefore, this factor also weighs strongly in favor of a finding that there is a likelihood of confusion.

### v.       Identity of Advertising Media Utilized

"The use of a mark in advertising is highly probative of whether the mark creates a likelihood of confusion in relation to another mark."[166] LRSBR presented evidence that TWTB continues to use the same Facebook account, Instagram account, Yelp web page, and TripAdvisor web page as it did when it was licensed by LRSBR to use the trademarks.[167] Accordingly, the Court finds that this favor also weighs strongly in favor of a finding that there is a likelihood of confusion.

### vi.      Defendant's Intent

As discussed above, although TWTB presented testimony of the efforts it has taken to design a new logo and replace objects which contained the LRSBR federally registered trademarks, LRSBR presented evidence that TWTB is holding "Lucy's" out to be the same business as the licensed "Lucy's Retired Surfer's Bar & Restaurant." The Court therefore finds that TWTB does intend to trade on the goodwill of the marks in its use of the word "Lucy's." Accordingly, the Court finds that this factor weighs in favor of a finding that there is a likelihood of confusion.

### vii.     Actual Confusion

As discussed above, LRSBR also presented evidence of actual confusion. LRSBR submitted as evidence posts on social media where customers identified that they were at "Lucy's" and tagged

---

[166] *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 197 (5th Cir. 1998).

[167] Tr. at pp. 149, 151, 158–59, 161.

33

the official fan page for "Lucy's Retired Surfer's Bar & Restaurant."[168] LRSBR also submitted as evidence an instance where the official fan page for Lucy's Retired Surfer's Bar & Restaurant was tagged in a post describing how the current "Lucy's" restaurant had provided food for an event but the post thanked "Lucy's Retired Surfers Bar."[169] Accordingly, the Court finds that this factor weighs in favor of a finding that there is a likelihood of confusion.

### viii.    Degree of Care Exercised by Potential Purchasers

As discussed above, neither party briefed or made arguments during the evidentiary hearing regarding the degree of care exercised by potential customers in deciding whether to patronize the restaurant. Therefore, the Court finds that this factor is neutral.

### ix.    Conclusion

Accordingly, the Court finds that LRSBR has clearly carried its burden of persuasion on its trademark infringement claim by demonstrating both that TWTB is estopped from challenging LRSBR's ownership of the mark "Lucy's" and that TWTB's use of the word "Lucy's" creates a likelihood of confusion.

### b.    *Surfer Bar Trade Dress*

LRSBR also seeks to enjoin TWTB from using surfboards, explicitly surfer-related decorative items, and menu items that contain references to surfing.[170] LRSBR contends that there is a substantial likelihood of success on its trademark infringement claim regarding its unregistered surfer bar trade dress. Trade dress infringement is established by showing that: (1) the trade dress

---

[168] *Id.* at p. 170; LRSBR Ex. 46.

[169] *Id.*; LRSBR Ex. 45.

[170] Rec. Doc. 33 at p. 7.

qualifies for protection; and (2) that the trade dress has been infringed, which requires considering the likelihood of confusion.[171]

### i. Whether the Trade Dress Qualifies for Protection

In its original motion, LRSBR broadly contended that TWTB was "estopped from challenging LRSBR's ownership of the Lucy's marks."[172] However, LRSBR has not demonstrated that the surfer bar trade dress was either included within the License Agreement or that the parties intended it to be included within the License Agreement. Therefore, the Court finds that LRSBR has not demonstrated that TWTB is estopped by its status as a former licensee from challenging LRSBR's rights to the trade dress.

LRSBR also asserts that TWTB is estopped from challenging its unregistered marks as a result of the dismissal with prejudice of TWTB's opposition to LRSBR's trademark registration applications.[173] Attached to LRSBR's motion is the "Notice of Opposition" filed by Raper and the Joseph E. and Janice V. Anthony Trust.[174] The opposition states that the trademarks LRSBR was trying to register were the designation "LUCY'S RETIRED SURFER'S BAR & RESTAURANT" and the designation and design "LUCY'S RETIRED SURFER'S BAR & RESTAURANT."[175] The surfer bar trade dress was not at issue in those proceedings.[176] Therefore, the Court finds that LRSBR has not demonstrated that TWTB is estopped from challenging LSRBR's ownership of trade dress

---

[171] *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117–18 (5th Cir. 1991).

[172] Rec. Doc. 17-2 at p. 16.

[173] *Id.* at p. 17 (citing *B & B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1299 (2015)).

[174] Rec. Doc. 17-3.

[175] *Id.*

[176] *Id.*

as a result of the dismissal with prejudice of any opposition before the United States Patent and
Trademark Office.

Therefore, the Court now turns to whether LRSBR has shown that it has a protectable right
to its use of the surfer bar trade dress. The Fifth Circuit has found that trade dress is protectable if
it is inherently distinctive or has achieved secondary meaning in the public's mind, and is not
functional.[177] Since LRSBR filed its motion for a preliminary injunction, LRSBR has proposed a
more limited restriction for the purposes of the preliminary injunction than it did in its original
motion, requesting that the Court order "TWTB [] remove all surfboards, all explicitly surfer-related
decorative items, and all menu items that contain references to surfing."[178] LRSBR asserts that the
surfer bar trade dress is inherently distinctive because it is not common or descriptive for a
restaurant and bar in New Orleans.[179] LRSBR submits the affidavit of Rampick in which he asserts
that "many customers comment about our surfer bar theme" and "lots of customers notice the surfer
bar theme and comment about how unique it is."[180] In opposition, TWTB contends that the use of
surf boards and surf-related imagery does not allow customers to identify LRSBR as the source of
the product that LRSBR is selling.[181] TWTB also offers evidence that there are five other restaurants
and/or bars within New Orleans which utilize a beach and/or surf theme.[182]

---

[177] *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001).

[178] Rec. Doc. 33 at p. 7.

[179] Rec. Doc. 17-2 at p. 16.

[180] Rec. Doc. 17-4 at p. 7.

[181] Rec. Doc. 22 at p. 11.

[182] *Id.* at p. 12 (citing Rec. Doc. 22-5).

36

In *Taco Cabana International, Inc. v. Two Pesos, Inc.*, the Fifth Circuit quoted approvingly the district court's jury instructions describing trade dress distinctiveness: "[d]istinctiveness is a term used to indicate that a trade dress serves as a symbol of origin. If it is shown, by a preponderance of the evidence, that Taco Cabana's trade dress distinguishes its products and services from those of other restaurants and is not descriptive and not functional, then you should find that Taco Cabana's trade dress is inherently distinctive."[183] LRSBR presented evidence during the hearing from Sarah Campbell, who served as both the events manager and general manager of the business, that customers often refer to the business as "Lucy's" or "that surfer bar over on Tchoupitoulas."[184] Dillen testified that customers identified the business "[a]s a surfer bar, as a laid-back easy-going surf bar by the decor, by the attitude, by the - - you walked in - - the surfboards."[185] Rampick also testified regarding the central role that the surfboards play in the restaurant's decor. On cross-examination, when asked about another bar located in New Orleans, Rampick testified that the surf theme associated with his business is unique as the surfboards are real and the artwork depicting the surf theme is quality artwork.[186] The Court finds that LRSBR has presented sufficient evidence to demonstrate that the trade dress involving surf imagery is inherently distinctive to identify the business as "Lucy's Retired Surfer's Bar & Restaurant."

---

[183]  932 F.2d 1113, 1120 (5th Cir. 1991).

[184]  Tr. at p. 119.

[185]  *Id.* at p. 133.

[186]  *Id.* at p. 92.

The Court next turns to whether the trade dress is functional. Even if trade dress is inherently distinctive, it does not merit protection if it is functional.[187] In *Two Pesos, Inc. v. Taco Cabana, Inc.*, the Supreme Court, discussing the law in the Fifth Circuit, found that "a design is legally functional, and thus unprotectible, if it is one of a limited number of equally efficient options available to competitors and free competition would be unduly hindered by according the design trademark protection."[188] TWTB does not contend that the surfer bar trade dress, as limited by LRSBR in its reply memorandum of "surfboards, all explicitly surfer-related decorative items, and all menu items that contain references to surfing," is functional.[189] Nor does the Court find that LRSBR's design is only one of a limited number of equally efficient options available to competitors. Accordingly, the Court finds that LRSBR has presented sufficient evidence to show that it has a protectable right to its use of the surfer bar trade dress.

### ii.    Likelihood of Confusion

Next, the Court turns to whether there is a likelihood of confusion between the LRSBR trade dress and the TWTB trade dress. LRSBR does not analyze whether there is a likelihood of confusion using the factors identified by the Fifth Circuit, asserting only that the "'new' Lucy's looks just like the old."[190] However, LRSBR does perform some analysis of these factors in its argument that all of TWTB's uses of LRSBR's marks, both registered and unregistered, create a likelihood of

---

[187] *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001).

[188] 505 U.S. 763, 775 (1992).

[189] Rec. Doc. 33 at p. 7.

[190] *Id.*

confusion.[191] Furthermore, LRSBR presented extensive evidence regarding these factors. Therefore, upon reviewing the evidence presented during the hearing and the arguments put forth in the briefs, the Court is able to discern whether evidence has been presented to support these factors for LRSBR's infringement claim for its surfer bar trade dress.

### a.        *Type of Trade Dress*

As discussed above, the Court finds that the trade dress at issue in this case is inherently distinctive.

### b.        *Similarity of the Trade Dresses*

During the evidentiary hearing, Rampick compared pictures of the interior of the restaurant before the License Agreement was terminated and pictures of the current interior of the restaurant.[192] In comparing the photographs, Rampick testified that the decor of the bar "is exactly the same" as it was back when it was originally built except for a remodel done a couple of years ago.[193] Rampick testified that the pictures on the wall behind the televisions were pictures that he had personally put up, there were two surfboards above the bar that were his personal surfboards, the lighting and fans were the same, the neon clock on the wall is the same clock that he had brought from New York City, chalkboards behind the bar are the same, and the shelving and furniture were all the same.[194] The only elements that Rampick identified that had been changed were that personal photographs of himself and his family had been removed, a large chair had been placed in the courtyard, a

---

[191]  Rec. Doc. 17-2 at pp. 17–20.

[192]  LRSBR Exs. 30–36.

[193]  Tr. at p. 57.

[194]  *Id.*

surfboard that had the registered trademark of the sailfish had been removed, and the exterior sign had been changed.[195]

The Court has also reviewed the photographs showing the interior and exterior of the restaurant before and after the termination of the License Agreement and also finds that the two are almost indistinguishable. Looking specifically to the items that LRSBR contends constitute its trade dress, the surfboards and surfer-related decorative items, the vast majority of these items have remained following the termination of the License Agreement. Therefore, the Court finds that the similarity of the trade dress weighs strongly in favor of a likelihood of confusion.

### c.       Similarity of Products or Services Provided

During the time the License Agreement was in place, the trade dress was used to decorate a restaurant and bar. After the termination of the License Agreement, the trade dress continues to be used to decorate a restaurant and bar. Therefore, the Court finds that this factor also weighs strongly in favor of a likelihood of confusion.

### d.       Similarity of Customers

LRSBR does not currently license the trademarks to any restaurant in the New Orleans area. However, if it were to do so while "Lucy's" remained open, in light of the evidence that "Lucy's" has retained substantially the same decor, food, and drinks, and operates at the same location where "Lucy's Retired Surfer's Bar & Restaurant" was located, the Court finds that the businesses would be in competition for the same customers.

---

[195] *Id.* at pp. 56–66.

### e.      Similarity of Advertising Media

As discussed above, LRSBR presented evidence that TWTB continues to use the same Facebook account, Instagram account, Yelp web page, and TripAdvisor web page as it did when it was licensed by LRSBR to use the trademarks.[196] Accordingly, the Court finds that this factor also weighs strongly in favor of a finding that there is a likelihood of confusion.

### f.      Defendant's Intent in its Adoption of its Restaurant Trade Dress

Following the termination of the License Agreement, TWTB has not altered the decor other than making small changes, including removing images of the federally registered LRSBR trademarks. The trade dress was already in existence at the location at the time of the termination of the License Agreement and TWTB has simply failed to change its decor since the termination of the License Agreement. However, this factor calls for the Court to analyze TWTB's intent in its "adoption" of its restaurant trade dress. Because the trade dress was already in existence at the location at the time of the termination of the License Agreement,  the Court finds that this factor does not weigh in favor of a likelihood of confusion.

### g.      Actual Confusion

As discussed above, LRSBR has presented evidence of actual confusion. LRSBR submitted as evidence posts on social media where customers identified that they were at "Lucy's" and tagged the official fan page for "Lucy's Retired Surfer's Bar & Restaurant."[197] LRSBR also submitted as evidence an instance where the official fan page for Lucy's Retired Surfer's Bar & Restaurant was tagged in a post describing how the current "Lucy's" restaurant had provided food for an event but

---

[196]  Tr. at pp. 149, 151, 158–59, 161.

[197]  *Id.* at p. 170.

41

the post thanked "Lucy's Retired Surfers Bar."[198] Accordingly, the Court finds that this factor weighs in favor of a finding that there is a likelihood of confusion.

### h.      Conclusion

The Court finds that LRSBR has presented sufficient evidence to demonstrate a likelihood of confusion. Accordingly, the Court finds that LRSBR has clearly carried its burden of persuasion to show a substantial likelihood of success on its trade dress infringement claim. The Court notes, however, that for the purposes of the preliminary injunction, the Court adopts LRSBR's limited trade dress definition of "all surfboards, all explicitly surfer-related decorative items, and all menu items that contain references to surfing."[199]

## C.      Substantial Threat of Irreparable Harm If the Injunction is Denied

In order to obtain a preliminary injunction, LRSBR must also clearly carry the burden of persuasion that there is a substantial threat of irreparable harm if the injunction is denied.[200] LRSBR asserts that TWTB is estopped from arguing that continued use of the Lucy's marks will cause irreparable injury because, in the License Agreement, TWTB acknowledged that failure to comply with the provision requiring TWTB to refrain from further use of the Lucy's marks upon termination of the License Agreement would result in "immediate and irreparable harm affording injunctive and any and all other appropriate relief to Licensor."[201] In opposition, TWTB contends that LRSBR has not offered any evidence that TWTB is damaging the goodwill associated with LRSBR's

---

[198]  *Id.*

[199]  Rec. Doc. 33 at p. 7.

[200]  *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195–96 (citing *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).

[201]  Rec. Doc. 17-2 at p. 24 (citing Rec. Doc. 17-6).

trademarks.[202] TWTB also reiterates that "[a]n injunction is a harsh, dramatic, and extraordinary remedy, and should only issue where the party seeking it is threatened with irreparable lo[s]s of injury without adequate remedy at law."[203]

Rampick also testified at the evidentiary hearing that LRSBR has found a prospective licensee.[204] When Rampick was asked whether the prospective licensee "would enter into a license agreement for the operation of a business using LRSBR, LLC's system for any location other than 701 Tchoupitoulas," he responded "I would say no."[205] Rampick also testified that he currently has no control over the trademarks or the "Lucy's concept" and his federally registered trademarks are dormant.[206] Rampick testified that the new menu, sign, and new logo do not illustrate what he spent thirty years developing.[207] Furthermore, Rampick testified that harm is being done to the trademarks because TWTB has instituted a policy adding a surcharge for the use of credit cards. Rampick testified that the practice was unprofessional and sends the wrong message to customers.[208]

In *Abraham v. Alpha Chi Omega*, the Fifth Circuit reviewed a district court's order of injunctive relief in a trademark infringement case.[209] In assessing whether the party seeking the injunction had suffered an irreparable injury and whether remedies available at law are inadequate

---

[202]   Rec. Doc. 22 at p. 21.

[203]   *Id.* (quoting *Lafreniere Park Found. v. Friends of Lafreniere Park*, No. 97-CA-152 (La. App. 5 Cir. 7/29/97); 698 So. 2d 449, 452).

[204]   Tr. at p. 111.

[205]   *Id.*

[206]   *Id.* at pp. 77–78.

[207]   *Id.* at p. 78.

[208]   *Id.* at pp. 78–79.

[209]   708 F.3d 614, 625–28 (5th Cir. 2013).

to compensate the injury, the court quoted a leading treatise on trademarks: "All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed."[210] The Fifth Circuit also quoted the treatise stating "[T]here seems little doubt that money damages are 'inadequate' to compensate [owner] for continuing acts of [infringer]."[211] Here, the Court finds that LRSBR has clearly carried its burden of persuasion in showing that it will suffer irreparable harm if the injunction is denied as it has demonstrated likelihood of confusion and presented evidence that it will be unable to license its trademarks without the injunction.

### D.   *Threatened Injury to the Movant Outweighs the Injury to the Nonmovant*

LRSBR asserts that the balance of harms strongly favors LRSBR because "[i]f a preliminary injunction is not granted, TWTB will continue to exploit, misuse, and abuse the Lucy's marks."[212] In opposition, TWTB contends that the threatened injury to LRSBR does not outweigh any damage the injunction might cause TWTB because the damage to TWTB would be "truly catastrophic."[213] In support, TWTB presented the testimony of Raper, the President, Managing Partner, and shareholder of TWTB. Raper testified that pursuant to TWTB's lease, TWTB must operate a bar and restaurant called "Lucy's."[214] He testified that if the Court were to enjoin TWTB from using the name "Lucy's," it is "highly probable" that its lease will be terminated.[215] Raper further testified that

---

[210] *Id.* at 627 (quoting 5 *McCarthy on Trademarks and Unfair Competition* § 30:2 (4th ed. 2001)).

[211] *Id.* (quoting 5 *McCarthy on Trademarks and Unfair Competition* § 30:2 (4th ed. 2001)).

[212] Rec. Doc. 17-2 at p. 24.

[213] Rec. Doc. 22 at p. 22.

[214] Tr. at p. 209.

[215] *Id.*

it would cost hundreds of thousands of dollars to relocate the restaurant and TWTB currently does not have sufficient capital to do so.[216]

On cross-examination, however, Raper testified that TWTB's lease will end in October 2017 and that the lease will not be renewed.[217] Therefore, regardless of the outcome of the motion for a preliminary injunction, Raper's testimony demonstrates that TWTB will have to leave the building located at 701 Tchoupitoulas Street in October 2017, and, as Raper testified, TWTB does not currently have the capital to relocate its business. Raper also testified on cross-examination that John Kirkendoll, LRSBR's prospective licensee, will take over the lease beginning in October 2017.[218]

LRSBR has presented evidence that there may be a licensed "Lucy's Retired Surfer's Bar & Restaurant" operating at 701 Tchoupitoulas Street in October 2017, as well as evidence regarding a potential loss of goodwill from customers through TWTB's new practices, including the surcharge on credit cards, and the changes to LRSBR's trademarks. Accordingly, the Court finds that LRSBR has clearly carried its burden of persuasion to prove that the threatened injury to it, through the potential harm to its trademarks and the potential loss of the prospective licensee, outweighs the injury to TWTB who, it appears, will no longer have a lease to operate a business at 701 Tchoupitoulas Street in October 2017, regardless of the outcome of this motion.

---

[216] *Id.* at pp. 210, 225.

[217] *Id.* at p. 228 ("A. The gentleman that approached me [regarding an offer to purchase TWTB] has reportedly signed a lease starting the day after the end of our lease forward. Q. So at the end of your lease term in October of 2017, you have to leave this location anyway? A. That's correct.").

[218] *Id.*

### E.   Public Interest

In support of their assertion that an injunction will serve the public interest, LRSBR cites the Fifth Circuit in *Sunbeam Products, Inc. v. West Bend Co.*, where the court found that "the public interest calculus is subsumed within the merits of the trade dress infringement claim: Because the product configuration of the American Classic Mixmaster® is entitled to trade dress protection, it necessarily follows that the preliminary injunction serves the public interest. Indeed, trade dress protection of the American Classic Mixmaster® will not frustrate competition, but will foster it."[219] In opposition, TWTB asserts that Louisiana has a strong public policy against "restrictions on the spirit of free labor" and in favor of "competition which is both fair and unfettered" and will essentially eliminate TWTB's ability to do business despite its good faith effort to ensure it does not violate any of LRSBR's trademarks.[220]

The Court, having found that there is a substantial likelihood of success on LRSBR's trademark infringement claims, finds, as the Fifth Circuit did in *Sunbeam Products, Inc.*, that a preliminary injunction will serve the public interest as LRSBR has demonstrated that its marks are entitled to protection and an injunction will reduce confusion and foster competition.[221]

### IV. Attorneys' Fees and Costs

LRSBR also asserts that it is entitled to recover attorneys' fees and costs under the Federal Trademark Act because this case is "exceptional."[222] In support, LRSBR contends that the Supreme

---

[219] Rec. Doc. 17-2 at p. 25 (citing *Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 260 (5th Cir. 1997), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001)).

[220] Rec. Doc. 22 at pp. 23–24 (citing *NCH Corp. v. Broyles*, 563 F. Supp. 142, 145 (E.D. La. Apr. 26, 1983) (Beer, J.)).

[221] *Sunbeam Prods., Inc.*, 123 F.3d at 260.

[222] Rec. Doc. 17-2 at p. 26.

Court has held that a case is exceptional when it "stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."[223] LRSBR contends that TWTB is willfully infringing its marks and has "effectively stolen the Lucy's brand" in the New Orleans market.[224] According to LRSBR, if TWTB had complied with the terms of the License Agreement, this action would not have been necessary.[225] In opposition, TWTB contends that the evidence "clearly shows that TWTB has made every effort *not* to infringe on LRSBR's trademarks," and has spent a "tremendous amount of time, effort, and money to ensure that it is not infringing on LRSBR's marks."[226] Therefore, TWTB asserts, this case falls far short of the type of exceptional case required to warrant an award of attorneys' fees and costs.[227]

Pursuant to the Lanham Act, 15 U.S.C. § 1117(a), a court may award reasonable attorneys' fees to a prevailing party in "exceptional cases." The Fifth Circuit has instructed that an exceptional case is one where the trademark infringement can be characterized as "malicious, fraudulent, deliberate, or willful"[228] and requires the prevailing party to show the exceptional nature of the case by clear and convincing evidence.[229] Furthermore, the Fifth Circuit has found that "[a] district court

---

[223] *Id.* (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014)).

[224] *Id.*

[225] *Id.*

[226] Rec. Doc. 22 at p. 24.

[227] *Id.*

[228] *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 373 (5th Cir. 2000).

[229] *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 65 (5th Cir. 1992).

normally should not find a case exceptional where the party presents what it in good faith believes may be a legitimate defense."[230]

During the evidentiary hearing, Raper testified that TWTB had spent approximately $40,000 on new menus, a new sign, and designs for a new logo.[231] He testified that upon his learning that the License Agreement had been terminated, he immediately contacted Deborah Schumacher, the General Manager, to have her begin the process of rebranding.[232] Deborah Schumacher testified that she began removing any of the registered trademarks from the restaurant and from social media and replacing them with TWTB's new logo.[233] She testified that she is unaware of any current use by TWTB of LRSBR's federally registered trademarks.[234] She further testified that TWTB replaced its t-shirts, menus, pictures, business cards, signage, and floor mats and that she had engaged a graphic design company to create a new logo.[235] Schumacher also testified that she contacted the host for the restaurant's website in an attempt to change the domain name and contacted Yelp to change the name of the restaurant.[236] She asserted that in some instances, there was a delay because she did not have immediate access to some of the social media accounts.[237]

---

[230] *Id.*

[231] Tr. at p. 205.

[232] *Id.* at p. 204.

[233] *Id.* at p. 234.

[234] *Id.* at p. 235.

[235] *Id.* at pp. 235, 237.

[236] *Id.* at p. 242, 245–46.

[237] *Id.* at p. 245.

TWTB presented extensive testimony regarding its efforts to remove any use of LRSBR's federally registered trademarks. Despite these changes, however, the decor of the restaurant has remained almost identical and the name of the restaurant has simply been shortened to "Lucy's." In its defense, TWTB asserted that it did not believe that LRSBR has ownership rights to either the word "Lucy's" or its surfer bar trade dress. The Court finds that although these arguments were ultimately unpersuasive, they were not made in bad faith. The Court finds that LRSBR has failed to demonstrate by clear and convincing evidence that this case is exceptional and therefore merits the award of attorneys' fees and costs. Accordingly, the Court denies LRSBR's request for attorneys' fees and costs.

## V. Conclusion

Considering the foregoing, the Court finds that LRSBR has demonstrated that it is entitled to a preliminary injunction. The Court finds that LRSBR has clearly carried its burden of demonstrating a substantial likelihood of success on both its trademark infringement claim regarding its registered trademarks and its trademark infringement claims regarding its unregistered trademark of the word "Lucy's" and its surfer bar trade dress. Additionally, the Court finds that LRSBR has clearly carried its burden of demonstrating that there is a substantial threat of irreparable harm if the injunction is not issued, that the threatened injury if the injunction is denied outweighs the threatened harm that will result if the injunction is granted, and that the grant of an injunction will not disserve the public interest. However, the Court also finds that LRSBR has failed to demonstrate, by clear and convincing evidence, that this case is exceptional as to merit an award of attorney's fees and costs.

Accordingly,

**IT IS HEREBY ORDERED** that LRSBR's "Motion for Preliminary Injunction"[238] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that TWTB is enjoined from using the word "Lucy's" or any of LRSBR's registered trademarks in connection with its restaurant.

**IT IS FURTHER ORDERED** that TWTB is enjoined from using surfboards, explicitly surfer-related decorative items, and all menu items that contain references to surfing.

**IT IS FURTHER ORDERED** that LRSBR's request for an award of attorneys' fees and costs is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 20th day of January, 2016.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[238] Rec. Doc. 17.